Good morning, your honors, and may it please the court, Michael Peterson from the Federal Public Defender's Office on behalf of Appellant Jose Munoz. I would like to reserve three minutes for rebuttal, if that's all right. So today, Appellant has one certified claim before this court, and that is that when the trial court excluded evidence, expert witness testimony about PTSD, that exclusion violated his right to present a complete defense. Now, because Jose Munoz admitted to the shooting, the only issue before the jury was his claim of self-defense, both perfect and imperfect. And in his first trial, there were two trials relevant here. In his first trial in 2013, four jurors accepted that argument. They accepted the imperfect self-defense argument, and those jurors voted not for murder, but for voluntary manslaughter. And that first trial ended in a deadlock jury, so a second trial was necessary. And as the second trial began two years later, Defense Counsel proffered the expert witness testimony of Dr. Jack Rothberg. Now, this was an expert who met with Appellant, examined Appellant, and then diagnosed him with PTSD. And when his testimony was proffered to the court, it was explained to the court that this diagnosis would be presented to the jury, as well as the symptoms that follow from it, like paranoia, hypervigilance, and sleep deprivation. Can I, I mean, I'm interested in this. It's helpful, although we have reviewed the briefs. And I just want to sort of cut to where we're at, because your claim now is that testimony was not allowed, and therefore that's the basis for the habeas petition. Is that right? Exactly. And so, the first question we have to ask is whether this was a substantive denial or a procedural denial, right? In the... In the state court. Yes. In the state court. It's the last reason that we need to talk about it. So, can you talk about that? Because, I mean, that goes to whether we're reviewing it de novo, or whether we give deference. And here we have, admittedly, it's a little ambiguous, although we get a lot of ambiguity on these issues, you know, when they come up to us. But where the, you, I mean, the district court, excuse me, the California Court of Appeals, that's the decision we're reviewing, right? Agreed. And they did cite Chapman, and there's a federal constitutional claim at issue here. So, why isn't there a presumption that this is a merits-based decision, given that? Sure. So, usually when a claim is kind of not addressed in a court of appeal opinion, there is a presumption that it was decided on the merits. That presumption is rebuttable when there is any indication that it's more likely that the court did something else. So, if it dismissed it on procedural grounds, or just forgot about it, if there's some other evidence that can be pointed to that makes that outcome more likely than a merits adjudication. And so, this discussion about... And that's what I guess I'm getting at, is, as you pointed out, if they don't say anything, it can be merits-based. Here, they did say something. They cited... We all agree there's a federal claim at issue here. And they cited to a federal case Chapman. So, why wouldn't that be even stronger evidence than saying nothing at all that this is a claim on the merits, that they're denying it on the merits? Sure. I think because this discussion comes in a footnote, and it's not... And it sort of obliquely references the error side of a constitutional claim. It says, because there has been no complete preclusion of a defense, we don't need to look at the Hermel-Serra standard under Chapman. And so, this argument kind of looks at what that phrase, a complete preclusion of defense, means. And there are two ways to go with this. One is, this is contrary to federal law. Assuming there's a merits adjudication, that that is not the federal standard. The argument you're alluding to, which was also raised, is that this is more akin to a procedural denial. Because, I guess it's so far off from the federal standard. I think I'm actually saying, I think it is a merits... Well, I don't know what... I'm positing that this could be a... Why would we treat this different than a merits denial, where they've actually cited to a federal case, and there's a federal claim at issue? Why wouldn't we just treat that as a merits-based denial? And then, the standard is a violation of clearly-established Supreme Court precedent, right? Well, I mean, that is something that you could do. I think the... And what would your argument be under that? Why is this contrary to clearly-established Supreme Court precedent? So, if it's a merits... Because they got the standard wrong? Yes, yes. And they got it wrong significantly. Because, as the Supreme Court laid out in Chambers and Crane, and Schaeffer, the right to present a complete defense is different than the right... Than this complete preclusion issue that the Court of Appeal is talking about. So, in Chambers, they looked at, what is the character of the evidence excluded? How does it fit into the case? How relevant is it? How exculpatory is it? And then, how does it fit into the rest of the case? And the Supreme Court case is on point. That's what they do with the evidence. Here, in a footnote, the California Supreme Court just says, well, there is no complete preclusion of a defense, so that's it. We don't need to go any further. And that's a very different analysis. Because a complete preclusion of a defense, I guess just in the plain language of it, means that there has been no evidence presented. And that's a very easy analysis to make. You just look at what evidence was presented. There's this expert witness testimony that's excluded. But was there other evidence that may have supported the same point? And that looks more at the evidence that was included, as opposed to which was excluded. And that is simply the wrong analysis. And that doesn't protect the federal right to present a complete defense. So, I mean, obviously, he's still, even with all this, he's still, at the end of the day, have to get over Brecht, right? Yes. And so, here are the arguments made on the other side. Mr. Munoz put on a self-defense, imperfect self-defense case. He explained why he did the things he did. How much would the expert really have mattered? And can we really say that there was a reasonable possibility that it would have changed things? I think it would have mattered quite a bit. And the reason is, and I'm gonna kind of limit it to, I think it's most compelling with regard to imperfect self-defense. Because he can only provide, in his testimony, his subjective experience of that morning, of the shooting. He can explain what he saw, what he felt, what he thought, and why he pulled the trigger when he did. And so, that's his subjective experience. But then there's the other side of it, too, which is kind of the other objective evidence that comes in, the physical evidence. Some of it matches up with his testimony. You know, the car without headlights, without a license plate, with the seats reclined, kind of coming back and forth in front of his house multiple times. That fits with his account. What doesn't fit is that he says he saw a gun, he says he saw gunfire. There was no gun found when the first responders arrived. And so, it looks like, when you kind of look at the situation, that he made a mistake, that there was no gun. And so, we're kind of left with that. And so, the expert testimony, though, is necessary for that, to complete that analysis. Because we have the subjective experience, but then the jury has to decide, is that credible? Is he lying, or is that truly his subjective experience? And when they don't have the PTSD evidence about what's going on in his brain, why is he different than, say, the average person? Why is he experiencing this different than one would expect? Why is he seeing a threat where, perhaps, a reasonable average person would not? And that's why you need the expert testimony, because you have to get, you have to explain to the jury why he's not just lying, right? You have to kind of square his, these statements about his subjective experience are true to him, because his brain is working differently, because he's got this paranoia, because he hasn't seen it. What about some of these other things that happened that were in the record about, you know, after the shooting, some of the comments that he made, you know, I caught that fool slipping, the escape to Mexico, right? How is that all consistent with the same theory? Sure, I think it is, it's not inconsistent with a, with him truly believing that someone drove by his house, took shots at him and his mother, and he fired back and killed that person. So he is, I will grant that these statements are, they don't convey remorse, they're not particularly nice, but he does believe that he was just in a gunfight, that he survived that gunfight, that someone came to his house to kill him, his mother, and then he fired back and he survived this gunfight. And these comments are coming hours after the shooting, right, so he's still in that. Counsel, don't we look at all those additional factors, all those other evidentiary components in trying to decide whether or not it would have made a difference if the doctor had been permitted to testify? I'm particularly alluding to the fact that no gun was found in the car, that he had prepared for an armed assault by going out and buying an AK-47 and ammunition, the statements to neighbors that he thought the neighborhood belonged to him and strangers were not allowed to intrude, his admissions on the recorded jail phone call that he caught the fool slipping, accompanying his mother each morning to the car, ordering his fellow, I don't know if he was another gang member, but the other individual that was at the house to hide the gun, and his flight to Mexico, aren't all those factors properly taken into consideration and weighing the impact of the excluded testimony? So they can, they certainly can be evaluated, they do come into play. I do think that the majority of what you just listed, this is, and this is all evidence the jury heard, and I think this is why the expert testimony is so important, because- But what I'm suggesting is that the expert testimony is not strong enough to undercut the cumulative impact of all of that damning evidence. I think, I mean, I disagree, especially when we're looking at imperfect self-defense. I caught the fool slipping, and so I smoked him. Right, and he thinks, I mean, under his- That doesn't sound like self-defense to me. Well, I mean, I think what it means is, I mean, I caught him slipping, I caught him unprepared. They came to kill me, they didn't know that I would be ready, right? It's not a, that's- But we've got to analyze the verdict in the light most favorable to upholding the verdict. So wouldn't that support a reasonable juror in concluding that he did not fire in self-defense? I mean, I just don't think it's inconsistent. I think you can say- It's not inconsistent? With a self-defense? Well, I mean, in a shootout, in a mutual combat shootout, where you think- I got him before he could get me? Is that- Yeah, exactly, yes. I mean, it's sort of- That's your answer to my question? It is. I mean, it's not- It's a proactive self-defense. Well, I mean, he feels he's being shot at, right? I mean, he thinks he's being shot at. I mean, I think what you're saying is it's a delusional self-defense, essentially. Correct. I mean, this is also the point I'm trying to make, is that these are comments that, absent PTSD, absent this brain evidence about why is he paranoid, why is he hypervigilant, why is he seeing threats everywhere, is that, I mean, you correctly pointed out that when you look at it without that evidence, it looks bad. It looks like he's- Well, it's relevant to the ultimate question, which is the Brecht versus Abramson determination as to whether it's reasonably likely that this would have produced a substantial and injurious effect that might've changed the result. And I guess, where you and I part companies, I'm having a hard time understanding why that standard is met here in the face of that evidence. It's pretty strong evidence of guilt. Well, I think it's evidence that he pulled the trigger, certainly. It's evidence that he is, perhaps distastefully celebrating his, that he defended his life and defended the life of his mother that's not how, I think, we would want someone to react in self-defense, but it doesn't conclusively prove that it's not self-defense. I mean, he didn't say, someone walked in front of my house and I shot them. He said- Well, no gun was found in the car, right? Right, when- We don't know whether there might've been another person in the car who took it and got away. But I think that is why, that's where the imperfect self-defense comes into play, right? Because he can, two things can be true. There can be no gun in the car. The person driving in front of his house can be innocent, cannot be a threat, but he can still subjectively think he sees a gun, thinks he sees muzzle flashes and pull the trigger. Those, both of those things can be true. And if the jury believes that both those things are true, believes that the victim did not have a gun, but also he truly thought his life was in danger, that's imperfect self-defense. That's why imperfect self-defense exists, to cover that scenario. And we needed the expert in order to kind of fill in the gaps and explain that scenario and the plausibility of that scenario to the jury. But that has, again, going back to the Brecht standard, that has to rise to the level that we would conclude that his due process rights were violated because that testimony was excluded, notwithstanding all this other evidence. That's true. And I think this expert in his testimony, I mean, as trial counsel described it when he was propping the evidence, was vital. I mean, it was the most important evidence in the case. So even, assuming that we disagree with what you just said, even if the District Court of Appeal erred in misapplying the Chapman standard in its footnote, it could still be characterized as harmless under Brecht if we conclude that the other evidence was just too strong in contravention of the excluded evidence. If we get, I mean, if we get to the harmless error analysis under Brecht, kind of, we get through AEDPA, through all that, and we're at Brecht, I think everything gets taken into account. But I think if, that I think the argument really is that this, the exclusion of this evidence had a significant injurious effect on the jury's ability to make a finding of imperfect self-defense. And that was something that jurors had done in the first trial. And so I think it is, I think it is true that if the expert witness testimony had been admitted that there is a very good likelihood that at least one juror would have gone from imperfect self-defense as opposed to first degree murder. So I think that there's a significant culpability difference between those two things. And I see them. Okay, we'll give you some time for rebuttal. Thank you.  Good morning, your honors. May it please the court, Deputy Attorney General Herb Tediff on behalf of the respondent. The district court properly denied habeas corpus relief because the California Court of Appeal did not contradict or unreasonably apply any clearly established Supreme Court precedent in rejecting the federal claim. So let me ask you about that. Do you think we need to reach that issue or should reach that issue? Because it seems like harmlessness is a pretty strong position. And you're suggesting we need to say that there was a merits-based decision or at least no rebuttable presumption of a merits-based decision. Well, I think the harmless error analysis is very strong and there's certainly ample basis to uphold the district court's judgment on the basis that there was no error. But I think it is also very clear that the claim fails under 2254D. And I'd like to briefly explain why that's the case. But again, regardless of the 2254D, we can discuss harmless error. I think it fails under BRICT. But the California Court of Appeal said that it was applying the state harmless error standard because the exclusion of the testimony did not constitute a complete preclusion of the defense that warranted analysis under the Chapman standard. That analysis necessarily found that there was no federal constitutional violation. That's why the state court of appeal was not applying the Chapman. So we have a merits decision that there was no federal constitutional violation. Now the- I thought there was one argument, and maybe I'm misunderstanding it, but the standard that was quoted in the footnote did not actually state the federal standard, but stated the state standard. Am I misremembering that? So there are two questions. That question goes to whether or not the California Court of Appeal applied the proper federal standard. But at the threshold, a merits decision requires, did they in fact reject the federal claim? So I think at the outset, the footnote is clear. They're saying we're not applying Chapman, implicitly saying there's no federal constitutional error. So that's the merits decision. Now we look to, did they properly apply clearly established Supreme Court precedent? And the answer to that is this. The United States Supreme Court has never addressed the constitutional standard governing the admission of expert testimony in support of a defense. Because there's no clearly established Supreme Court precedent, it doesn't really make a difference how the California Court of Appeal rejected the claim. Because it could not be contrary to or unreasonable application of a precedent that does not exist. But having said that, I don't think they did imply the, or apply the incorrect standard in talking about the complete preclusion of defense. Again, the Supreme Court cases, there's no case clearly on point, but there is a case, Rock versus Arkansas, where the United States Supreme Court said that a rule prohibiting this post-hypnotic testimony precluded the defendant from virtually testifying about any events that happened that day. You can look at that standard and say, what they're saying is, her right to prevent a defense was violated because she was precluded from testifying about any of the events, which is a complete preclusion of a defense. So I don't think this is, if we look at whether reasonable minds can agree or disagree, the standard applied by the Court of Appeal I don't think is contrary to any clearly established Supreme Court precedent. I think it's consistent with it. For example, that Rock case. It's very- He did, in his brief to the District Court of Appeal, cite to both the federal and the state standards, did he not? Did petitioner in, I'm sorry, in the district court? Yeah, and before the State District Court of Appeal. Yes. In his brief, he clearly raised the question. Yes, absolutely. So I guess what I'm really asking is whether or not the footnote maybe could have been better drafted to reflect the fact that it was responding to that argument when it relied, but only cited on Walton, and said it didn't think that Chapman applied. That kind of a shorthand version of saying we don't see a federal constitutional- I think that's exactly what they're saying. They're saying we don't see a federal constitutional violation, therefore we're not applying Chapman. So the state court saw only a state court question, state court of admissibility, and then a harmless error analysis under state court. Where is this complete preclusion test even coming from? So again, I think that you can read Rock versus Arkansas as discussing complete preclusion. It's not, they don't use that language, but they talk about how the exclusion of the evidence prevented her from virtually testifying about anything that happened on the day of the crime. So I think the California Court of Appeal is using these Supreme Court cases, Washington versus Texas as well, where they precluded any accomplice testimony about what happened that day. And these cases sort of, what is underlying these Supreme Court cases is that the defense was really not allowed to present the vital evidence in their defense. So I think that's what it's interpreting. But again, I don't think we get to that point, and I think this court recognized it in Moses versus Payne, where the court considered these Supreme Court cases, but ultimately said that because the Supreme Court has never addressed the constitutional standard governing the admission of expert testimony, that there is no clearly established Supreme Court precedent that the state court could have incorrectly applied. So I think that's the case here. We don't have to find Supreme Court cases that might be consistent with this complete preclusion of a defense. Under the very difficult AEDPA standard, you have to show that there is a Supreme Court case on point that the state court contradicted. And there simply isn't any, because the Supreme Court has never addressed expert testimony, the exclusion of expert testimony. So in that regard, I think this claim, I think the district court was more than right in rejecting the claim under section 2254D. And then moving on to Brecht, I think the claim fails equally under the Brecht standard. You know, petitioner's defense was that he shot at the victim because he saw the victim pointing a gun at his mother's car and then saw gunfire coming from the car. What defense wanted to present as far as this expert testimony was that he suffered from PTSD that made him more susceptible to the fight or flight syndrome and being a heightened state of awareness. But petitioner testified that he saw the gun and he saw gunfire. And under those circumstances, whether or not he was in a heightened state of awareness didn't matter. Under state law, if he saw the victim pointing a gun at his mother and saw gunfire, he was entitled to act in self-defense, regardless of what his mental state was. Additionally, as far as the evidence that he was in a heightened mental state, even without expert testimony, there was more than abundant evidence that he was, including that he had had a fight with a person in his yard two days before the shooting. Can I go back to the other one? Because I think, as I understood the petitioner's claim here, it's not this, I mean, there's, I guess we're talking about two defenses. One is actual self-defense and one is, you know, impossible self-defense, or imperfect self-defense. And this does seem perhaps to go to imperfect self-defense. I mean, the example you gave is actual self-defense and that's what was presented at the jury. And the jury apparently thought there was no actual self-defense because there was no gun. And I mean, to the extent you're trying to figure that out. But as to the imperfect self-defense, this idea that, well, I mistook that, but that was because of my PTSD. Why would it not be relevant to that? Well, defendant's testimony was unequivocal that he saw a gun and saw gunfire. He was very specific about what he saw that day. The car, the white car that was parked without a front license plate and with the lights off. But couldn't the PTSD have caused him to, I mean, I agree with you and he lost on that, but couldn't the PTSD or that testimony have buttressed this claim that, even though I'm convinced that I saw that, it may be that I didn't, that I caused myself to see that because I was in this heightened state. The problem with that is as the Court of Appeal recognizes it's an opinion on appeal, under California law, unreasonable self-defense was never intended to encompass reactions to threats that exist only in the defendant's mind. So to the extent he's trying to say, I suffer from PTSD and therefore I imagine these things. That isn't actually a defense. That's not a defense under California law. But what is, what's the difference then between actual self-defense and imper... Unreasonable self-defense is, you could have seen a threat and it may have seemed like a bigger threat than you imagined, but it's not, it has to be... You thought you saw a gun and it turned out to be a knife or something like that. That would work. And under those circumstances, you don't need expert testimony on PTSD. And to the extent in this case, the defense wanted to argue he thought that a cell phone was a gun, that is permissible and that's also a common sense concept that a jury can understand, that PTSD is irrelevant to that. So that's why the expert testimony really was unimportant in this case. If it was gonna go to some, I visualized things that weren't there, not allowed under California law. To the extent he wanted to argue that he was in a heightened state and all these factors of evidence were before the jury, so they certainly could have explained why, and that therefore, I thought this was a gun, and I overreacted, don't need expert testimony for that. That's common sense, that's defense that's presented, typically in cases without expert testimony on PTSD. And lastly, I would just, as the court has already... No, I just wanna make sure I understand your point. So what you're saying is that if Dr. Rothberg had testified that the defendant was essentially hallucinating as a result of PTSD and thought he saw a gun under California self-defense law, that would not constitute an imperfect self-defense? That would not, and I would cite the court to excerpts of record at page 69, where the California Court of Appeal quotes People v. Elmore, which again, says that unreasonable self-defense was never intended to encompass reaction to threats that only exist in the defendant's mind. So I think, to the extent, yes, if he was saying he was hallucinating because of PTSD, that's not a defense that would be available to him. Is that not some other kind of defense? It may not be imperfect self-defense, but is it not some other bucket of defenses one can raise? Well, in California, you can't set your own standard for self-defense and say, I was hallucinating this, and therefore, I saw it. Whether it could be some other defense, other than self-defense, that's a good question. I don't know whether it would... But that wasn't raised? Yes. That wasn't raised? No other defense? Just to be clear, was it only actual self-defense, or was it... It was both actual defense and imperfect self-defense that were raised. But no other defenses were raised? Not that I'm aware of, no. So, and then, of course, as the court recognized, the rest of the evidence was extremely incriminating and inconsistent with self-defense, including that the defendant belonged to a gang that did not like African-Americans, that he had a tattoo on him that said blood killer, meaning he wanted to kill African-American gang members, that he was known for not wanting anybody to come on a street unannounced, and in this case, the victim was African-American. He came onto a street unannounced. He shot him, and then he essentially bragged about it. He said, I caught that fool slipping, which means I caught him off guard, which is inconsistent with self-defense. If you're catching someone off guard, you're not shooting them in self-defense. And he also said he blasted that fool, and of course, he fled to Mexico. All these things are extremely incriminating and inconsistent with self-defense. So I think under Brecht, as well, this claim clearly fails, unless the court has any other questions, I will submit. Okay, thank you. We'll give you two minutes for rebuttal. Thank you. I want to address a few things. So first, I want to address what Respondent just brought up about the gang evidence. Now, the jury explicitly rejected the gang enhancement as to the shooting. So there was a gang enhancement alleged, that argument was made, that this was part of him bolstering his gang. That was rejected. That gang enhancement was found, this was not a gang shooting. This was not done to bolster his gang. So the jury rejected that. And then, now I want to turn to the argument about Moses. And so Moses doesn't, Moses isn't as broad as Respondent makes it out to be. So the central tension in Moses is that a defendant has the right to present relevant evidence on the one hand, and the state can have valid interest in excluding that evidence. And so Moses kind of, and it cites to Sheffer, and it cites to Crane, and this line of evidence, this line of case law is that there are limits placed on the admission of relevant evidence. And it can be for, because states are allowed to set their own rules as to what kind of experts can be admitted, and thus and such. But that analysis presupposes two things. It presupposes that the evidence is found to be relevant, and that there's a state interest that is being balanced against that relevance. So here, the evidence was excluded as irrelevant right off the bat. And so the whole inquiry was kind of cut off early when the court said, this is irrelevant. We're not going down that path. Well, it would be, would it not, if, as I characterized it, the testimony established the defendant was hallucinating? I don't, there was no mention of hallucination. I don't think that's a fair characterization of what. Well, I use the term hallucination, which I concede is a pejorative term, but the doctor wanted to use the term heightened, what is it, heightened awareness? Right, like heightened response time, heightened awareness, hypervigilance. But I mean, isn't that sort of a corollary to the defendant has sort of a clouded view of the events that are occurring because of his medical condition, and therefore can't see the same thing that a normal person not suffering from PTSD would perceive at the time of the events in question. Well, I think this goes to the heart of what is, what is imperfect self-defense for? It always, imperfect self-defense essentially always involves some kind of misunderstanding, right? Like they're wrong about something. And this isn't a hallucination. I mean, this is, there's a car driving back and forth in front of his house, it's dark. There are other sort of suspicious circumstances, not that would warrant shooting him, but then in addition, he thinks he sees a gun and he sees flashes and he thinks it's a muzzle flash. And why is his brain making those quick, like why is it making those jumps so quickly? Why does he think there's a gun where his normal person might not? And so I think that's not a hallucination. That is like, it's a very small point where why is he seeing a gun where someone else might not? And that goes to the paranoia and hypervigilance of PTSD. And PTSD evidence is something that comes into trials all the time, right? I mean, this is not like a, this is not novel. This is not routinely excluded as a hallucination. It's kind of, this is normal evidence in California. It's normal evidence in federal courts. This is the kind of evidence that is relevant to this determination. Okay, thank you. Thank you to both counsel for your arguments. The case is now submitted and that concludes our arguments for the day. I'll rise. This court for this session stands adjourned.
judges: TALLMAN, NELSON, BRESS